IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| RACHEL HALL o/b/o JOHN F. HALL,[1] ) | CIVIL ACTION NO. 9:08-3440-JFA-BM |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

The Plaintiff (John F. Hall) filed the complaint in this action, pro se, pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein he was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) and Supplemental Security

---

[1] The pleadings in this case are signed by Rachel Hall, who is the mother of John F. Hall. Although generally a non-attorney parent may not proceed pro se on behalf of his or her child, two circuit courts of appeal have reached a narrow conclusion that a parent who would in all likelihood be the representative payee of SSI benefits has a sufficient personal stake to present the claims of an allegedly disabled child in a United States District Court, although it may be that the allegedly disabled child has to be a minor. See Machadio v. Apfel, 276 F.3d 103 (2nd Cir. 2002); Harris v. Apfel, 209 F.3d 413 (5th Cir. 2000). Because the exact nature of the claim being asserted in this case was not clear upon filing, a serve order was entered. The record obtained since that time indicates that John F. Hall is not a minor. However, as the matter has now been fully briefed, and the Defendant has raised no objection to the Plaintiff's status, the undersigned has addressed the claims asserted on the merits.



Income (SSI)[2] on April 30, 2004 (protective filing date), alleging disability as of June 15, 1999 due to obsessive-compulsive disorder (OCD), attention-deficit hyperactivity disorder (ADHD), bipolar disorder, and seizures. (R.pp. 53-55, 127, 725-728). Plaintiff's claims were denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on January 28, 2008. (R.pp. 747-782). The ALJ thereafter denied Plaintiff's claims in a decision issued May 30, 2008. (R.pp. 9-23). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 1-4).

Plaintiff then filed this action in United States District Court. Although Plaintiff's pro se complaint is difficult to decipher, Plaintiff is apparently asserting that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for an award of benefits. Cruz v. Beto, 405 U.S. 319 (1972)[Federal Courts are to liberally construe pro se pleadings to allow for the development of a potentially meritorious case]. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

---

[2] Although the definition of disability is the same under both DIB and SSI; Emberlin v. Astrue, No. 06-4136, 2008 WL 565185, at * 1 n. 3 (D.S.D. Feb. 29, 2008); "[a]n applicant who cannot establish that [he] was disabled during the insured period for DIB may still receive SSI benefits if [he] can establish that [he] is disabled and has limited means." Sienkiewicz v. Barnhart, No. 04-1542, 2005 WL 83841, at ** 3 (7th Cir. Jan. 6, 2005). See also Splude v. Apfel, 165 F.3d 85, 87 (1st Cir. 1999)[Discussing the difference between DIB and SSI benefits]. Under SSI, the claimant's entitlement to benefits (assuming they establish disability) begins the month following the date of filing the application forward. Pariseau v. Astrue, No. 07-268, 2008 WL 2414851, * 13 (D.R.I. June 13, 2008).



**Scope of review**

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)).

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a Defendants' Exhibit novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

**Discussion**

A review of the record shows that Plaintiff, who was twenty-three (23) years old when he alleges he became disabled, has a tenth grade education with past relevant work experience as a tow truck driver and set-up technician. (R.pp. 53, 69-72). In order to be considered "disabled" within

3



the meaning of the Social Security Act, Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for which he is qualified by his age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months.

After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff does suffer from the severe impairments[3] of unspecified backache, seizure disorder, adjustment disorder with mixed anxiety and depression, and a history of substance abuse, rendering him unable to perform his past relevant work, he nevertheless retained the residual functional capacity (RFC) to perform a restricted range of light work[4], and is therefore not disabled. (R.pp. 11, 19, 21). In his brief, as well as in a reply brief, Plaintiff has submitted voluminous materials which he contends support his claims. As it is unclear from Plaintiff's filings whether Plaintiff has intended to single out any particular part of the ALJ's decision as constituting error, and in light of Plaintiff's pro se status, the undersigned has reviewed the entire record to determine whether the Commissioner's decision is supported by substantial evidence and is legally correct under controlling law. Hays, 907 F.2d at 1456. After this review, the undersigned concludes that there is substantial evidence in the record to support the conclusion of the ALJ that Plaintiff was not disabled as that term is defined in the Social Security Act during the relevant time period, and that the decision should

---

[3]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).

[4]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).

4



therefore be affirmed.

The record reflects that Plaintiff received anger management services in 1997 (R.p. 270). In September 1999 (a few months after his disability allegedly began) Plaintiff underwent an assessment at the AOP Mental Health Center, at which time Plaintiff was complaining of increasing anxiety and depression and increased drinking, although he denied any suicidal ideation or psychotic symptoms. (R.p. 268). Plaintiff continued thereafter to receive outpatient therapy from the mental heath clinic, and took Xanax (an anti-anxiety medication) by prescription . (R.pp. 217-271, 433-451). On August 9, 2001, Plaintiff went to see Dr. Don Bryant (his primary care physician) complaining of significant depression that had been chronic. When Plaintiff told Dr. Bryant that Xanax was the only medication that had been of any help, Dr. Bryant told him that Xanax was not an anti-depressant, was very addictive, and that Plaintiff would need to find an alternative drug for the long term. Dr. Bryant reported that Plaintiff was "very reluctant to accept that advice." (R.p. 366).

The ALJ's decision notes that Dr. Bryant "struggled with the [Plaintiff] to maintain him on an appropriate dose of Xanax for anxiety." (R.p. 14). Otherwise, Dr. Bryant's physical examination of the Plaintiff was generally unremarkable, findings that (as noted by the ALJ in his decision) remained "remarkably similar from the beginning to the end of the time period" of Dr. Bryant's treatment of the Plaintiff (August 9, 2001 through May 3, 2007). (R.p. 14; see R.pp. 343, 345, 347, 350, 354-357, 363-364, 366-368). The ALJ also noted that Dr. Bryant, while acknowledging some anxiety and the need to monitor Plaintiff's diagnosis of having hepatitis C, did not believe Plaintiff to be disabled (although Plaintiff considered himself to be disabled), advised Plaintiff that there was no medical reason that he could not work (opining that Plaintiff's primary

5



problem was a lack of motivation and poor judgment), and that Plaintiff needed to seek employment. (R.pp. 14, 324, 343, 350). See Craig v. Chater, 76 F.3d 585, 589-590 (4th Cir. 1996) [noting importance to be accorded treating physician's opinion].

When Plaintiff applied for DIB and SSI in June 2004, he reported that he drove a car and visited friends; (R.pp. 56-58, 73-77); and in July 2004, Plaintiff denied having suffered from any seizures in over ten years, and stated that he did not take any medications for seizures. (R.p. 61). Plaintiff's medical records further reflect that, during the period of time he claims he was disabled, he received treatment for a chin injury after he fell down in a bar, had to obtain emergency care after being assaulted after drinking a pitcher of alcohol, injured his eye while working on a conveyor belt at the County landfill, ruptured his eardrum while jumping off a houseboat into a lake, and engaged in such activities as mowing grass, fishing, and performing some "odd jobs". See generally, (R.pp. 149, 153, 158, 160, 162, 193).

Plaintiff had a psychological evaluation performed in August 2004, during which he admitted to a history of abusing alcohol, marijuana, and "speed", and advised that he currently used one quarter of a bag of marijuana every week and drank two to three beers per week. (R.pp. 165-166). Plaintiff also advised that, although he had been treated at the mental health clinic for a number of years for extreme anger problems and depression, he was no longer being treated at the clinic. (R.p. 165). Plaintiff's mental status examination revealed that he was cooperative, oriented, exhibited adequate concentration, appropriate emotional reactions with adequate memory, and that he denied having any hallucinations, paranoia or obsessive features. (R.pp. 166-167). The consultative evaluator, Dr. Richard Cohen, noted that, although Plaintiff's mother reported that he had ADHD and

6



had been treated with Ritalin beginning at age 3, there was no record of current treatment for ADHD. Psychological testing revealed I.Q. scores in the borderline intellectual functioning range; (R.pp. 166-167); and Dr. Cohen assessed Plaintiff with cannabis abuse and ADHD, amphetamine abuse (in remission), and borderline intellectual functioning, with a concentration level adequate for one to two step work tasks. (R.pp. 168, 170-171).

Dr. Lisa Varner, a state agency psychologist, reviewed Plaintiff's medical records the following month and opined that Plaintiff had mild restrictions in his activities of daily living and in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, with no episodes of decompensation. (R.p. 186). Dr. Varner also found that Plaintiff was "not significantly limited" in most areas of mental activity, although a few moderate limitations were noted. (R.pp. 172-173). A second state agency psychologist essentially found the same limitations a year later, in May 2005. (R.pp. 195-213). Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [opinion of a non-examining physician can constitute substantial evidence to support the decision of the Commissioner].

In connection with his applications for DIB and SSI, Plaintiff was examined by psychologist Dr. David Massey in April 2005, who diagnosed an adjustment disorder with depression and anxiety, and ADHD by history. (R.p. 194). Although Plaintiff is alleging that he has been disabled since 1999, Plaintiff told Dr. Massey that he had been working with his father in a repossession business until it went bankrupt in or around 2004, and that since that time he had been putting in applications for work but had not gotten an interview. (R.p. 193). Plaintiff then had a mental status assessment performed at the mental health clinic in June 2005, at which time Plaintiff



was complaining of anxiety and stress, "depression at times" and that he "just want[ed] to stay in bed all day." In relating his mental health history, Plaintiff stated that he had tried to "cut [his] wrists a couple of times", but reported no hospitalizations. He conceded some recent drug use, including marijuana and methamphetamine, and on examination was found to be "a bit slow", with a "hard time concentrating". He was assessed with bipolar disorder and depression, and was assigned a GAF of 60.[5] (R.pp. 222-225).

In January 2006, Plaintiff was seen at the mental health clinic by psychiatrist Dr. Michael Manley. Contrary to Plaintiff's previous diagnosis, Dr. Manley believed a bipolar disorder was "unlikely", and that Plaintiff probably instead had a chronic anxiety disorder either caused by, or exacerbated by, his alcohol and substance abuse. (R.pp. 218-219). Dr. Manley noted that Plaintiff was continuing to receive prescriptions for Xanax from Dr. Bryant, and that Plaintiff also suffered from a seizure disorder which had "become more disabling in the last few years" such that he had not been "able to return to work." Id. Dr. Manley conducted a mental status examination and found Plaintiff to be alert and cooperative with some restlessness and anxiety. No recent suicidal thoughts, homicidal ideations, or hallucinations were noted, and Plaintiff was assessed as having problems with anxiety with a history of substance abuse. (R.p. 219). When Plaintiff returned to see Dr. Manley for a follow-up visit on March 28, 2006, he was found to be "relatively stable". Plaintiff reported that he had had one seizure the previous month, and Dr. Manley opined that he did not believe Plaintiff

---

[5]"Clinicians use a GAF [Global Assessment of Functioning] to rate the psychological, social, and occupational functioning of a patient." Morgan v. Commissioner of Soc. Sec. Admin., 169 F.3d 595, 597 n.1 (9th Cir. 1999). A GAF of 51 to 60 indicates that only moderate symptoms are present. Perry v. Apfel, No. 99-4091, 2000 WL 1475852 at *4 (D.Kan. July 18, 2000); Matchie v. Apfel, 92 F.Supp.2d 1208, 1211 (D.Kan. 2000). Further, as noted, Plaintiff was assessed at the top of this range.



had any major clinical depression at that time, and that his anxiety seemed to be under pretty good control. (R.p. 217).

Plaintiff had another consultative psychological evaluation performed in October 2007 by Dr. Spurgeon Cole. Plaintiff told Dr. Cole that he experienced about six seizures a year, with his last seizure having occurred four months previous. Plaintiff reported that he went to church, shopped, cooked, cleaned, did laundry, mowed the grass, played with his children, and fished. On examination, Plaintiff was found to be "well focused" with coherent speech and logical thought processes, although he appeared somewhat anxious and "mildly" depressed. Dr. Cole opined that Plaintiff was capable of learning simple as well as fairly complex tasks, and that he interacted well with others and concentrated well. Dr. Cole diagnosed Plaintiff with depression, not otherwise specified, moderate generalized anxiety disorder, and a seizure disorder. (R.pp. 398-400).

At the hearing on January 28, 2008, Plaintiff testified that he could not work because he could not stay focused or concentrate, was in constant pain, and that his hepatitis C made him tired and limited his motivation. Plaintiff also stated that he had had a seizure approximately two weeks earlier, and that he generally had them once a month. Plaintiff also related that he was limited physically because of back pain, and that he spent four hours a day "reclining" because of his back problems. Plaintiff also testified that he had not engaged in any substance abuse since 1999, notwithstanding the extensive medical record showing otherwise. See generally (R.pp. 754, 757-759, 762-769).

Subsequent to the hearing (but prior to the issuance of the ALJ's decision), additional medical records were submitted for the ALJ's consideration. These records included a letter from

9



Dr. Bryant dated January 4, 2008, in which he stated that he had been treating the Plaintiff since 2001, that he has been diagnosed with bipolar disorder, and was currently being treated for depression and a seizure disorder. (R.p. 405). These submissions also contained records of hospitalizations by the Plaintiff in February and March 2008. The first hospitalization was two days after his hearing, on January 30, 2008, with the record noting that Plaintiff had been referred voluntarily "for severe depression and suicidal ideation". Plaintiff told the hospital staff that he had been depressed for five years, and that he had also been diagnosed with schizophrenia. Plaintiff also related that he was being prescribed Xanax, and that he used "crystal meth" three times per month, contradicting his hearing testimony. Although Plaintiff advised that he suffered from hepatitis, his liver function tests were normal on admission. Plaintiff was discharged on February 8, 2008 with a GAF of 60 "in the past year". (R.pp. 465-467). Plaintiff was thereafter hospitalized again on March 13, 2008 when he was brought to the emergency room by his mother, who was concerned about his being depressed and suicidal. Plaintiff told the attending physician (Dr. Manley) that he thought his mother had over reacted. By the next morning Plaintiff stated that he was "feeling fine and . . . [was] ready to go home". He denied any recent drug or alcohol use, but stated he continued to have some "breakthrough" seizures. A mental status examination performed by Dr. Manley found Plaintiff to be alert and cooperative with appropriate affect and good appetite, and he was discharged the next day. (R.pp. 456-457; see also R.pp. 452-455).

       The ALJ reviewed this medical history as well as Plaintiff's subjective testimony and found that Plaintiff retained the RFC to perform light work involving simple and repetitive tasks (entry-level and unskilled) with no close interaction with co-workers or the public due to his



adjustment disorder, and no exposure to hazards such as heights or dangerous machinery due to his seizure disorder. (R.p. 19). The ALJ considered the opinions and records of all the medical providers, taking particular note of Dr. Bryant's opinion of non-disability, and Dr. Manley's diagnosis of an adjustment disorder with mixed depression and anxiety. (R.pp. 12, 14). The ALJ further found that, based on Plaintiff's mental health records, he had only a mild restriction in his activities of daily living, with moderate difficulty in social functioning and in concentration, persistence or pace. (R.p. 18). As for Plaintiff's complaints of physical limitations, the ALJ noted Dr. Bryant's records showing little evidence of a disabling physical impairment and recommendation of only conservative treatment for his complaints. (R.pp. 16, 414-421). Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992)[generally conservative treatment not consistent with allegations of disability]. Finally, the ALJ discounted Plaintiff's subjective testimony as to the extent of his impairments, noting where his testimony was not supported by the medical records as well as other inconsistences in his statements and claims. (R.pp. 16-17, 19-20). See Anderson v. Barnhart, 344 F.3d 809, 815 (8th Cir. 2003)[Evidence that a claimant is exaggerating symptoms can be considered as part of the evaluation of Plaintiff's subjective complaints]; Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990)[False or exaggerated responses are entitled to weight in determining whether an impairment exists]; Jenkins v. Bowen, 861 F.2d 1083, 1086 (8th Cir. 1988)[ALJ may consider evidence that a claimant has exaggerated his symptoms].

The cited medical records and opinions of Plaintiff's treating and consultative physicians provide ample substantial evidence to support the functional capacity found by the ALJ; see Craig, 76 F.3d 585, 589-590 [noting importance to be accorded treating physician's opinion];

11



Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly give significant weight to an assessment of an examining physician]; Richardson v. Perales, 402 U.S. 389, 408 (1971) [assessment of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability]; as do the findings of the state agency physicians who reviewed Plaintiff's medical records. Smith, 795 F.2d 343, 345 [opinion of a non-examining physician can constitute substantial evidence to support the decision of the Commissioner]. The decision reflects that the ALJ thoroughly reviewed and discussed the record and evidence in this case, and the undersigned can find no reversible error in his decision. Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994) [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence]; Hunter v. Sullivan, 993 F.2d at 35 [ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]; Cruse v. Bowen, 867 F.2d 1183, 1186 (8th Cir. 1989) ["The mere fact that working may cause pain or discomfort does not mandate a finding of disability"].

While the ALJ did find that Plaintiff suffers from a severe mental impairment, this finding does not in and of itself entitle Plaintiff to social security benefits. Foster v. Bowen, 853 F.2d 483, 489 (6th Cir. 1988) [A mental impairment diagnosis is insufficient, standing alone, to establish entitlement to benefits.]. Plaintiff's medical records provide substantial evidence to support the level of impairment found by the ALJ with respect to Plaintiff's social functioning, activities of daily living, and deficiencies of concentration, persistence or pace, and the ALJ's limitation of the Plaintiff to jobs which require the performance of only simple and repetitive tasks (entry-level and unskilled)



with further restrictions on close interaction with others and exposure to hazards adequately address these limitations as well as well as Plaintiff's history of a seizure disorder. Bowen v. Yuckert, 482 U.S. 137, 146, n. 5 (1987)[Plaintiff has the burden to show that he has a disabling impairment]; Jolley v. Weinberger, 537 F.2d 1179, 1181 (4th Cir. 1976) [finding that objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled]; Clarke v. Bowen, 843 F.2d 271, 272-273 (8th Cir. 1988)["The substantial evidence standard presupposes . . . a zone of choice within which the decision makers can go either way without interference by the Courts"]; Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ["[A] psychological disorder is not necessarily disabling. There must be a showing of related functional loss."]; cf. Wood v. Barnhart, No. 05-432, 2006 WL 2583097 at * 11 (D.Del. Sept. 7, 2006) [By restricting plaintiff to jobs with simple instructions, the ALJ adequately accounted for plaintiff's moderate limitation in maintaining concentration, persistence or pace]; Smith-Felder v. Commissioner, 103 F.Supp.2d 1011, 1014 (E.D.Mich. June 26, 2000) [hypothetical question including work involving only a mild amount of stress and only "simple one, two, or three step operations" properly comports with findings of ALJ as to plaintiff's moderate limitations in concentration, social functioning, and tolerance of stress]; Kusilek v. Barnhart, 175 Fed. Appx. 68, 71 (7th Cir. 2006) [string cites]; Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"].

        The record also reflects that, in response to a hypothetical at the hearing which incorporated the limitations found by the ALJ to exist in this case, a vocational expert identified several jobs which Plaintiff could perform with his limitations. (R.pp. 778-779). While Plaintiff may



disagree with the findings of the ALJ, the undersigned has previously concluded that these findings are supported by substantial evidence in the record as that term is defined in the applicable case law. Hence, the hypothetical given by the ALJ to the vocational expert was proper, and the undersigned finds no grounds in the ALJ's treatment of the vocational expert's testimony for reversal of the final decision of the Commissioner. <u>Lee v. Sullivan</u>, 945 F.2d 687, 692 (4th Cir. 1991))[ALJ not required to include limitations or restrictions in his hypothetical question that he finds not to be supported by the record]; <u>see</u> <u>also</u> <u>Martinez v. Heckler</u>, 807 F.2d 771, 773 (9th Cir. 1986).

Plaintiff also submitted additional evidence to the Appeals Counsel following the ALJ's decision. (R.pp. 730-746). This material consisted of some medical records from a Dr. A. M. Bamashmus, who began treating Plaintiff on March 24, 2008 and who diagnosed Plaintiff with bipolar and attention deficit disorder. There is also a letter from Plaintiff's mother. In its decision rejecting Plaintiff's appeal, the Appeals Counsel noted that the evidence before the ALJ included several hundred pages of records related to Plaintiff's mental health treatment, and found that the new evidence from Dr. Bamashmus did not contain any significant new information. The Appeals Counsel further found that the complaints contained in Plaintiff's mother's letter concerning the alleged bias of the ALJ at the hearing were not supported by the hearing record, and that the new evidence and statements therefore did not provide a basis for changing the ALJ's decision. (R.pp. 1-2). The undersigned can find no reversible error in the Appeals Council's treatment of this new evidence. <u>Harmon v. Apfel</u>, 103 F.Supp.2d 869, 873 (D.S.C. 2000)[noting that "the Appeals Council must articulate its reason for rejecting new, additional evidence, so that t reviewing court may understand the weight the Commissioners attributed to the new evidence"].

Finally, with respect to the additional exhibits submitted to this Court by the <u>pro se</u> Plaintiff as part of his filing, the Court may remand a case on the basis of new evidence only upon

14



a showing that the new evidence is material (i.e., if there is a reasonable possibility that the new evidence would have changed the outcome), *and* there is good cause for failure to incorporate such evidence into the record in a prior proceeding. Further, to even constitute "new" evidence, the material must not have been in existence or available to the claimant at the time of the administrative proceeding. See Sullivan v. Finklestein, 496 U.S. 617, 626 (1990); Wilkins v. Secretary, 953 F.2d 93, 96 (4th Cir. 1991)(en balk); Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985). Plaintiff's new evidence does not provide a basis for remand based on these criteria. Much of this "new" evidence consists of medical articles and legal regulations, which do not specifically address Plaintiff's claims. The remainder of these materials consist of undated opinions from individuals whose connection to the Plaintiff is unclear, address different standards for disability (for example, under the Americans with Disabilities Act), and in any event provide no explanation as to why they were not previously made available (assuming they were in existence prior to the ALJ's decision). A power of attorney from the Plaintiff to his mother also does not provide a basis for remanding this case.

While Plaintiff's mother's concern for his welfare is certainly understandable, the evidence that he continues to receive treatment from Dr. Bamashmus or others is simply not a basis for a finding of prior disability. Obviously, if Plaintiff's condition has worsened, he may file a new application for benefits. See e.g. Jones v. Callahan, 122 F.3d 1148, 1154 (8th Cir. 1997)["Additional evidence showing a deterioration in a claimant's condition significantly after the date of the Commissioner's final decision is not a material basis for remand, although it may be grounds for a new application of benefits."]. However, the documents submitted do not provide a basis for a remand of the decision in this case.

## Conclusion

Substantial evidence is defined as " ... evidence which a reasoning mind would accept



as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

_____
Bristow Marchant
United States Magistrate Judge

December 3, 2009

Charleston, South Carolina



16

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a Defendants' Exhibit novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

